# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

CABUYA CHEROKEE, SA, CABUYA DELAWARE, SA, CABUYA FLORIDA, SA, CABUYA SOLUE, SA, CABUYA SPRUCE, SA, CABUYA SUWANEE, SA, CIRCUITO INICIAL CUATRO HAS, SA, DULCE VERDE TROPICAL DEL PACIFICO, SA, EL AREA FINAL, SA, FRENTE VERDE, SA, INMOBILIARIA CEROS Y UNOS, SA, INVERSIONES FONDO AZUL DEL PACIFICO, SA, PLAYA COCOS DE MONTEZUMA, SA, PLAZA ARENA SOL, SA, TERRENO JOTA ZETA, SA, VISTA CABUYA JG, SA, VO Y ZETA TERRENOS, SA, VESPER BELL, LIMITADA, JERRY SARBO, AMERICAN TRANSWORLD CORPORATION and BETH BASHAM,

    Appellants,

v.                                                                  Case No: 8:13-cv-2942-T-30

JEFFREY DAVID VOGT, JEANETTE MELANIE VOGT, CHED EDWARD VOGT and SUSAN K. WOODARD,

    Appellees.

## **ORDER**

THIS CAUSE comes before the Court on appeal of the Bankruptcy Court's Order Granting Amended Motion for Partial Summary Judgment and Denying Cross-Motion for Summary Judgment and Memorandum Opinion and Order Denying Motion for Reconsideration of Summary Judgment (collectively, the "Summary Judgment Order").

On May 11, 2015, the Court held a hearing on the instant appeal and heard oral argument from the parties. Upon review, the Court concludes that the Bankruptcy Court erred when it concluded that the settlement agreement at issue in this appeal was unenforceable as a matter of law based on insufficient notice to creditors.

The Court has jurisdiction to hear this bankruptcy appeal under 28 U.S.C. § 158(a)(3).[1]

## STANDARD OF REVIEW

The Bankruptcy Court's summary judgment ruling is reviewed *de novo*. *See In re Jacks*, 642 F.3d 1323, 1328 (11th Cir. 2011). Similarly, issues related to preclusion, such as the application of *res judicata* are reviewed *de novo*. *See In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001).

## BACKGROUND

The Summary Judgment Order at issue in this appeal was entered in an adversary proceeding filed by Appellants (also referred to as the "ATWC Parties"), seeking a declaratory judgment that a settlement agreement executed in 2009 between the Debtor (Jeffery David Vogt), his brother, and American Transworld Corporation ("ATWC") in an earlier Chapter 11 case was enforceable.

The facts related to the Debtor's prior Chapter 11 case and the timing of events surrounding the execution of the settlement agreement, the dismissal of the adversary proceeding (resolved by the settlement agreement), the entry of the confirmation order,

---

[1] On May 1, 2014, the Court granted Appellants' leave to appeal (Dkt. 7).

and subsequent motions and orders regarding the enforcement of the settlement agreement are critical to the Court's conclusion that the creditors in the Chapter 11 case received adequate notice of the settlement agreement. As such, due process was sufficient. The Court will now discuss the relevant background facts.

The Debtor and his brother (collectively, the "Vogts") acquired investment property in Costa Rica through a variety of Costa Rican companies; they planned on developing the property into a high-end resort. In 2006, the Vogts entered into a loan agreement with Jerry Sarbo, a family friend. Under the agreement, Sarbo, using his corporation ATWC, would provide short-term financing to the Vogts in exchange for the Vogts providing Sarbo with an investment opportunity in the project. If Sarbo elected not to invest in the project, the Vogts were obligated to repay Sarbo the money he invested in the project, with repayment of that loan secured by shares of stock in the Costa Rican companies. Ultimately, Sarbo, individually and on behalf of ATWC, as ATWC's representative, notified the Vogts that he did not intend on investing in the project and demanded repayment of the money. On or about February 27, 2009, the Debtor, presumably faced with an inability to repay the loan and the potential loss of his interest in the Costa Rican companies, filed for Chapter 11 bankruptcy.

On May 4, 2009, Sarbo and ATWC filed a proof of claim in the Chapter 11 case for over $15,000,000, premised on the 2006 loan agreement. In its Proof of Claim, ATWC asserted that under the 2006 loan agreement, it was owed $9.9 million in principal, $3.1 million in interest, and $2.1 million in "Advances," and that Sarbo,

individually or as ATWC's representative, owned Vogt's shares in several of the Costa Rican companies.

On August 31, 2009, the Debtor filed an objection to ATWC's claim. On September 3, 2009, the Debtor filed an adversary proceeding seeking to determine the extent, validity, and priority of ATWC's and Sarbo's liens on the Costa Rican companies or the property owned by those companies.

On September 8, 2009, the Debtor proposed an amended plan. Under the amended plan, the Debtor remained obligated to pay ATWC's claim in full by refinancing the debt using the Costa Rican companies as collateral. The Debtor was also required to pay ATWC in full by the later of December 31, 2009, or 90 days following the conclusion of the adversary proceeding that the Debtor filed. If the Debtor failed to refinance by the deadline, the Debtor proposed to surrender approximately 30-40 percent equity in the Costa Rican companies to ATWC.

On October 9, 2009, the Debtor filed his second amended plan. The proposed treatment of ATWC's claim was the same under the amended plan and the second amended plan.[2] All of the creditors voting on the plan, except ATWC, voted to accept it; ATWC objected to the proposed plan. Notably, with respect to unsecured creditors, the original plan, first amended plan, and second amended plan treated them the same: they were entitled to 50 percent of their allowed unsecured claims together with simple interest

---

[2] The Liquidation Analysis attached to the plan showed that the Costa Rican stock subject to ATWC's lien of $15.1 million had a fair market value of $43.4 million, and a liquidation value of $6.6 million.

calculated at three percent per annum made in quarterly payments from the Debtor's future income.[3]

An initial confirmation hearing on the Debtor's second amended plan and ATWC's objection was scheduled for December 2, 2009. At that hearing, which was noticed to all parties, the Debtor and ATWC informed the Bankruptcy Court that they were working on settling their dispute under the loan agreement. On December 17, 2009, the parties returned for a second confirmation hearing. This hearing was also noticed to all parties. The Debtor and ATWC informed the Bankruptcy Court that they were still working on a draft settlement agreement.

Two days later, on December 19, 2009, the parties entered into a settlement agreement, the settlement agreement that is at issue in this case. Under the written settlement agreement, the Debtor had 90 days to pay ATWC approximately $14 million in exchange for all of ATWC's interest in the Costa Rican companies. If the Debtor failed to pay the settlement amount within 90 days, he relinquished his interest in the Costa Rican companies to ATWC; in other words, ATWC would receive 100 percent of the Debtor's interest in the Costa Rican companies.

---

[3] It is also notable that the claims register and ballots in the Chapter 11 bankruptcy reflect total unsecured creditors in the approximate amount of $71,539.56, and only one of the unsecured creditors (with a claim in the approximate amount of $55,238.86) cast a ballot on the plan. And if any of the secured creditors were to have a portion of their claims become unsecured, that portion was to be paid in the same manner: 50 percent of their allowed unsecured claims together with simple interest calculated at three percent per annum made in quarterly payments from the Debtor's future income.

On January 13, 2010, the Bankruptcy Court held a hearing on the parties' settlement agreement. At the hearing, a copy of the settlement agreement was provided to the Bankruptcy Court and a summary of its material terms was discussed. The Bankruptcy Court orally dismissed the adversary proceeding with prejudice and reserved jurisdiction to enforce the settlement agreement in the main Chapter 11 case. The parties noted, and the Court agreed, that the settlement agreement could be incorporated into the confirmation order and enforced in that manner.

On January 29, 2010, the Bankruptcy Court entered an "Order Dismissing Adversary Proceeding with Prejudice and Court Retention of Jurisdiction to Enforce Settlement Agreement." The order noted that a copy of the settlement agreement had been provided to the Bankruptcy Court. It concluded that the adversary proceeding was dismissed with prejudice. It specifically stated that: "The Court shall enforce the terms and provisions of the Settlement Agreement *in the general case*." (emphasis added). Finally, it stated: "The retention of jurisdiction by the Court to enforce the terms and provisions of the Settlement Agreement shall be incorporated in the Confirmation Order." (Dkt. 11-59).

Subsequently, the parties had some disputes regarding the enforcement of the settlement agreement. These disputes were discussed in the Chapter 11 case at a February 10, 2010 hearing and a March 9, 2010 hearing. At the March 9, 2010 hearing, ATWC sought enforcement of the settlement agreement for the first time. The

Bankruptcy Court noted that it would enter an order "supplementing the order approving the settlement agreement" regarding the dispute. (Dkt. 11-44 at 18:5-9).

On March 11, 2010, the Bankruptcy Court entered its ruling in the Chapter 11 case from the March 9, 2010 hearing in an order titled "Supplemental Order Enforcing Settlement Agreement." The order stated, in relevant part:

> Pursuant to the Order Dismissing Adversary Proceeding With Prejudice and Court Retention of Jurisdiction to Enforce Settlement Agreement entered January 29, 2010 in Adversary No. 8:09-ap-00637-MGW, the Court retained jurisdiction in the chapter 11 case to enforce settlement. The Court reviewed the Settlement Agreement and Mutual General Release and heard the arguments of counsel . . . Additionally, the Court is familiar with the case and issues from prior status conferences regarding the Settlement Agreement.

(Dkt. 11-20). The order then enforced certain terms of the settlement agreement. *See id.*

On March 24, 2010, the Bankruptcy Court entered its written Order Approving Disclosure Statement and Confirming Debtors' Plan of Reorganization that confirmed the Chapter 11 Plan (the "Confirmation Order"). With respect to ATWC's objection to the Second Amended Plan, paragraph 7.c) of the Confirmation Order stated that the objection was "overruled as moot" based upon the "Agreement of the parties." With respect to the "Agreement of the parties," paragraph 8 stated "[t]hat all causes of action and objections to claim or objections to plan or disclosure statement between the Debtor and American Transworld Corporation, a creditor, *have been settled pursuant to terms of the Settlement Agreement in the adversary proceeding number 8:09-ap-637, and that this Court retains*

*jurisdiction to enforce the terms of the Settlement Agreement.*" (Dkt. 11-21) (emphasis added).

On March 25, 2010, *one day after the Confirmation Order was entered*, ATWC filed an "Emergency Motion For Order Determining Debtor In Default Under Settlement Agreement . . ." A copy of the settlement agreement was attached to the motion as Exhibit A. In the motion, ATWC requested enforcement of the settlement agreement for a second time. (Dkt. 11-22). Notably, all creditors received notice of the motion and attached settlement agreement, and notice of hearing.

On April 1, 2010, a hearing was held on ATWC's motion. At the hearing, the Bankruptcy Court acknowledged the settlement agreement and noted that it was "comprehensive," "of record," and "approved by the Court." (Dkt. 11-42 at 55:9-12). The Bankruptcy Court then discussed some of the settlement agreement's material provisions. And noted that: "The settlement agreement also provided, and importantly - - and this was a matter that was stressed by both parties many times over the last four months, that this Court would have exclusive jurisdiction over any disputes arising between the parties in connection with the settlement." *Id.* at 56:5-10). Ultimately, the Bankruptcy Court enforced the settlement agreement for a second time, stating at the hearing: " . . . I will determine that the Debtor was not able to fund and that, secondly, I do have exclusive jurisdiction over all disputes between the parties and the arbitration should not have been filed, and should be undone, that the debtor no longer has any claim to the entrusted assets that were put into the trust, that the stock certificates and other

8

documents need to be endorsed and this settlement agreement needs to be enforced according to its terms." *Id.* at 61:1-8.

On April 2, 2010, the Bankruptcy Court entered its ruling from the April 1, 2010 hearing with its written "Order Determining Debtor In Default Under Settlement Agreement And That American Transworld Corporation Is Entitled To Immediate Turnover Of Entrusted Assets . . ." (Dkt. 11-24). All creditors received notice of this order.

On April 12, 2010, the Debtor filed a Notice of Appeal of the Bankruptcy Court's April 2, 2010 Order. On April 26, 2010, the Debtor withdrew his Notice of Appeal.

Subsequently, ATWC filed a third motion for enforcement of the settlement agreement. A hearing on that motion took place on May 12, 2010, and the Court entered an order on May 21, 2010, enforcing the settlement agreement for a third time. All creditors received the third motion, notice of hearing, and May 21, 2010 enforcement order.

On May 21, 2010, the Bankruptcy Court also entered an order dismissing the Chapter 11 case. All creditors received the dismissal order. The order retained jurisdiction "for the limited purpose of enforcing the Debtor's compliance with prior orders of this Court . . ." (Dkt. 11-37).

A few months later, the Debtor filed for Chapter 7 Bankruptcy. ATWC initiated an adversary proceeding seeking a declaration that the Bankruptcy Court's Confirmation Order in the Chapter 11 case and the order dismissing the Debtor's adversary proceeding

in the Chapter 11 case were final orders for which the time to appeal had expired. The Trustee responded by filing a counterclaim seeking a declaration that the 2009 settlement agreement was either void or voidable. Each party moved for summary judgment. The Bankruptcy Court ultimately concluded that the settlement agreement was unenforceable.

## DISCUSSION

The Bankruptcy Court's Memorandum Opinion and Order Denying Motion For Reconsideration Of Summary Judgment aptly noted that the parties' summary judgment motions required the Bankruptcy Court to balance two fundamental principles: due process and finality of confirmation orders. The Bankruptcy Court concluded that due process "won" because "there was nothing in the plan or confirmation order that gave creditors notice of the terms of the parties' compromise" and "none of the creditors in this case were given notice of the proposed settlement." The Bankruptcy Court also noted that it "never actually approved the settlement agreement" and "the terms of the parties' settlement are not contained anywhere in the record in the previous chapter 11 case." The Bankruptcy Court concluded that the creditors were denied due process because they were not given "notice of the compromise and an opportunity to object to it." (Dkt. 11-3). As such, the settlement agreement was unenforceable as a matter of law. Based on the record outlined herein, the Court reverses that decision.

"Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to

present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (internal quotations omitted). The creditors in this appeal received such notice.

Specifically, the record reflects that, in the Chapter 11 case, the settlement agreement was referenced and discussed at multiple hearings, in multiple motions, and in the Bankruptcy Court's own enforcement orders issued *prior* to the entry of the Confirmation Order. As outlined in more detail above, the fact that the parties were planning on entering into a settlement agreement was discussed at hearings on December 2, 2009, and December 17, 2009. Disputes regarding the enforcement of the already executed settlement agreement were discussed at hearings on February 10, 2010, and March 9, 2010. At the March 9, 2010 hearing, the Bankruptcy Court noted that the settlement agreement had already been approved; the Bankruptcy Court planned on entering an order "supplementing the order approving the settlement agreement." On March 11, 2010, the Bankruptcy Court did just that - it entered an order enforcing the settlement agreement. The creditors in the Chapter 11 case received notice of *all of these events*. Thus, they had actual notice of the settlement agreement prior to the entry of the Confirmation Order. And they certainly had notice that was sufficient to apprise them of the pendency of the settlement agreement and afford them an opportunity to present any objection to the settlement agreement.

Even if the Court assumes that notice was inadequate prior to the Confirmation Order, the March 24, 2010 Confirmation Order specifically referenced the settlement agreement and stated that ATWC's objection was moot based upon the parties'

"Agreement." The Confirmation Order also noted that the Bankruptcy Court retained jurisdiction to enforce the settlement agreement's terms. Like the prior filings, the Confirmation Order provided adequate notice of the settlement agreement to the other creditors. Simply put, they were sufficiently apprised of the settlement agreement and had an opportunity to object to the Confirmation Order.

And even if the Court assumes that the March 24, 2010 Confirmation Order was insufficient notice, the very next day, on March 25, 2010, ATWC filed its emergency enforcement motion and attached the settlement agreement to the motion. This provided the creditors with actual notice of the settlement agreement's terms. And this notice was provided well before the expiration of the creditors' appellate rights to object to the Confirmation Order or to any procedural defect regarding the approval of, notice of, and enforcement of the settlement agreement.

At the April 1, 2010 hearing, the Bankruptcy Court noted that the settlement agreement was "of record" and "approved by the Court." The time to object to the Confirmation Order or any procedural deficiency related to the approval of, notice of, and enforcement of the settlement agreement had still not expired.

As outlined above, subsequent filings regarding the settlement agreement occurred and the Bankruptcy Court ultimately found the Debtor in default of the settlement agreement and ordered the transfer of the stock to ATWC. At no time did the creditors object to the settlement agreement or the Bankruptcy Court's enforcement of it.

In sum, it is incredible to accept Appellees' argument in this case that the creditors in the Chapter 11 case did not receive adequate notice of the settlement agreement. The creditors could have requested a copy of the settlement agreement at any time prior to the entry of the Confirmation Order, they could have participated at any of the hearings where the terms of the settlement agreement were discussed, they could have objected to the Confirmation Order or to any of the Bankruptcy Court's subsequent enforcement orders; however, they chose not to take any action with respect to the settlement agreement. These events manifest that due process was provided to the creditors. As such, the Bankruptcy Court erred when it granted Appellees' motion for summary judgment and deemed the settlement agreement unenforceable based on a lack of due process.[4]

This brings the Court to the other fundamental principle that the Bankruptcy Court acknowledged: finality of confirmation orders. A bankruptcy court's confirmation order that is final and no longer subject to appeal becomes "*res judicata* to the parties and those in privity with them." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009). Any deprivation contained in the Confirmation Order, including the Bankruptcy Court's failure to comply with the notice required by Rule 2002, could have been the subject of an objection or motion with the Bankruptcy Court and a subsequent appeal from any

---

[4] Any argument that the settlement agreement was never approved is without merit. The record outlined herein demonstrates that the Bankruptcy Court recognized that the settlement agreement had been approved in the Chapter 11 case. And the parties never argued in the Chapter 11 case that the settlement agreement had not been approved. To the contrary, they and the Bankruptcy Court acted under the assumption that it had been approved because the settlement agreement was enforced against the Debtor at least three times.

adverse ruling. The record is clear that the creditors slept on these appellate rights; *res judicata* prevents them from asserting any objection at this late juncture. The Bankruptcy Court acknowledged this at the hearing on the parties' motions for summary judgment: "And I think that sets the boundaries of this *res judicata* finality and strength of the confirmation order, is if you put it in the plan, or even in the confirmation order, and the creditors are sitting back and they let the ship go out of the harbor and they don't object, they're going to be bound on what they could have raised - - they raised or they could have raised or did raise." (Dkt. 11-98 at 11-12).

The Supreme Court's decision in *Espinosa* is instructive on this point. In *Espinosa,* the debtor proposed a plan that provided he would repay the principal on his student loans and the accrued interest on the loan would be discharged. *See id.* at 264. The proposed plan was served on the student loan creditor, who filed a proof of claim that included both the principal and the accrued interest. *See id.* at 265. There were no objections to the plan and the bankruptcy court confirmed the plan without holding an adversary proceeding or making a finding of undue hardship. *See id.* The student loan creditor did not object to the confirmed plan. *See id.*

Several years later, the debtor completed the payments on his student loan principal and the bankruptcy court discharged the student loan interest. *See id.* at 266. The student loan creditor challenged the confirmed plan under Fed. R. Civ. P. 60(b)(4). *See id.* The student loan creditor argued, in relevant part, that the debtor failed to file an adversary proceeding pursuant to Bankruptcy Rule 7001(6), the bankruptcy court failed to

14

conduct an adversary hearing, and, as such, the bankruptcy court never made an "undue hardship ruling" required under the applicable bankruptcy rules. *See id.*

The Supreme Court noted that the bankruptcy court's order confirming the debtor's plan was a final judgment from which the creditor did not appeal. *See id.* at 269. After determining, like the Court has in this appeal, that due process was sufficient, the Supreme Court held: "Given the Code's clear and self-executing requirement for an undue hardship determination, the Bankruptcy Court's failure to find undue hardship before confirming [the debtor's] plan was a legal error .... But the order remains enforceable and binding on [the creditor] because [the creditor] had notice of the error and failed to object or timely appeal." *Id.* at 275.

The Supreme Court also noted that the debtor's failure to serve the creditor with a summons and complaint deprived the creditor of a procedural right. *See id.* at 272. But this procedural error did not void the plan because the creditor could have timely objected to this deprivation and appealed from an adverse ruling on its objection. *See id.*

Similarly, to the extent that the Bankruptcy Court or the parties committed procedural errors in the Chapter 11 case, the creditors, like the creditor in *Espinosa*, were on notice and could have objected to any errors and appealed any adverse rulings.

Finally, it is important to note that the creditors' failure to object to the settlement agreement and failure to object to the Bankruptcy Court's enforcement order holding the Debtor in default is unsurprising. The treatment of the unsecured creditors remained the same throughout the Chapter 11 case - they were to receive 50 percent of their allowed

15

unsecured claims made in quarterly payments from the Debtor's future income. And only one unsecured creditor voted. The settlement agreement did not deprive the unsecured creditors of any interest because the treatment of them (Classes 17 and 18) did not have any connection to the Costa Rican companies that were the subject of the settlement agreement. According to the projections attached to the plan, the Debtor had more than sufficient income from other sources to make the small quarterly payments to unsecured creditors.[5] Thus, although the Court concludes that due process was sufficient, the Court also concludes that there could never have been a due process violation because the creditors did not have a legal interest in the treatment of the Costa Rican companies.

## CONCLUSION

The Court concludes that the Bankruptcy Court approved the settlement agreement and the creditors in the Chapter 11 case received adequate notice of the settlement agreement as a matter of law.

It is therefore **ORDERED AND ADJUDGED** that:

1. The Bankruptcy Court's Order Granting Amended Motion for Partial Summary Judgment and Denying Cross-Motion for Summary Judgment and Memorandum Opinion and Order Denying Motion for Reconsideration of Summary Judgment are reversed for the reasons explained herein.

2. This appeal is remanded to the Bankruptcy Court for further proceedings.

---

[5] Through the Debtor's Liquidation Analysis, creditors were on notice that the Costa Rican stock was potentially worth substantially less than ATWC's lien ($6.6 million v. $15.1 million).

3.   The Clerk of Court is directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on May 26, 2015.

/s/ James S. Moody, Jr.
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Bankruptcy Judge Michael Williamson
Bankruptcy Clerk of Court
Counsel/Parties of Record

S:\Even\2013\13-cv-2942 bk appeal-order-final.wpd